**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| EXPERIENCE HENDRIX L.L.C., a Washington Limited Liability Company, and AUTHENTIC HENDRIX L.L.C., a Washington Limited Liability Company, *Plaintiffs-Appellants/ Cross-Appellees*, <br><br> v. <br><br> HENDRIXLICENSING.COM LTD, a Nevada Corporation, DBA Hendrix Artwork, DBA Hendrixartwork.com; ANDREW PITSICALIS, an individual; CHRISTINE RUTH FLAHERTY, *Defendants-Appellees/ Cross-Appellants*. | Nos. 11-35858 <br> 11-35872 <br><br> D.C. No. <br> 2:09-CV-00285-TSZ <br><br> OPINION |

Appeal from the United States District Court
for the Western District of Washington
Thomas Zilly, Senior District Judge, Presiding

Argued and Submitted
March 7, 2013—Seattle, Washington

Filed January 29, 2014

2    EXPERIENCE HENDRIX V. HENDRIXLICENSING.COM

Before: David M. Ebel,* William A. Fletcher,
and Johnnie B. Rawlinson, Circuit Judges

Opinion by Judge Ebel;
Partial Concurrence and Partial Dissent by Judge
Rawlinson

**SUMMARY**[**]

**Trademark**

The panel affirmed in part, reversed in part and vacated
in part the district court's decision in trademark litigation
concerning a dispute over the commercial use of a deceased
celebrity's image, likeness, and name.

Experience Hendrix, LLC, which owns trademarks that it
uses to sell and license products related to deceased rock
legend Jimi Hendrix, alleged that defendants were licensing
merchandise that infringed Experience Hendrix's trademarks.

The panel reversed the district court's determination that
Washington's Personality Rights Act is unconstitutional, and
remanded defendant's declaratory judgment claims pertaining
to the Act with instructions to enter summary judgment on
those claims in favor of Experience Hendrix.   The panel

_____

    * The Honorable David M. Ebel, Senior Circuit Judge for the United
States Court of Appeals for the Tenth Circuit, sitting by designation.

    ** This summary constitutes no part of the opinion of the court.  It has
been prepared by court staff for the convenience of the reader.

affirmed the district court's decision granting Experience Hendrix partial summary judgment on its claim that defendant's use of "Hendrix" in its domain names infringed Experience Hendrix's mark "Hendrix." The panel vacated the permanent injunction and remanded so that the district court could revise language in the injunction to clarify what conduct is and is not enjoined. The panel reversed in its entirety the district court's Fed. R. Civ. P. 50(b)(3) decision to strike most of the jury's award of damages under both the federal Lanham Act and Washington's Consumer Protection Act. The panel affirmed the district court's order granting a new trial on damages under both of these statutes and remanded for a new trial on such damages. The panel vacated the district court's award of attorney's fees under Washington's Consumer Protection Act and remanded the fee request for further proceedings.

Judge Rawlinson concurred in part, and dissented in part. Judge Rawlinson concurred in much of the majority's opinion, but dissented from the majority's holding that a new trial is warranted on the issue of damages. Judge Rawlinson would remand for reinstatement of the damages awarded by the jury, and for an award of attorney's fees to Experience Hendrix as the prevailing party.

## COUNSEL

John D. Wilson, Jr. and Alfred E. Donohue, Wilson Smith Cochran Dickerson, Seattle, Washington; Michael Madden, Bennett Bigelow & Leedom, Seattle, Washington, for Plaintiffs-Appellants/Cross-Appellees.

4    EXPERIENCE HENDRIX V. HENDRIXLICENSING.COM

Thomas T. Osinski, Jr., Osinski Law Offices, P.L.L.C., Tacoma, Washington, for Defendants-Appellees/Cross-Appellants.

Duncan Crabtree-Ireland and Danielle Van Lier, Screen Actors Guild, Inc., Los Angeles, California, for Amicus Curiae Screen Actors Guild, Inc, American Federation of Television & Radio Artists, AFL-CIO, Luminary Group LLC, and the Estate of Marilyn Monroe, LLC.

## OPINION

EBEL, Circuit Judge:

This litigation stems from a dispute over the commercial use of a deceased celebrity's image, likeness, and name. The sole heir of deceased rock legend Jimi Hendrix formed two companies, Plaintiffs Experience Hendrix, L.L.C., and its wholly owned subsidiary, Authentic Hendrix, L.L.C. (collectively "Experience Hendrix"). Among other things, Experience Hendrix owns trademarks that it uses to sell and license products related to Jimi Hendrix. In this litigation, Experience Hendrix succeeded on its claims alleging that Defendants Andrew Pitsicalis and his company, Hendrixlicensing.com, L.L.C. (collectively "Pitsicalis"[1]), were licensing Hendrix-related merchandise that infringed Experience Hendrix's trademarks. As a result, the district court permanently enjoined Pitsicalis's infringing conduct, and a jury awarded Experience Hendrix damages under two statutes, the federal Lanham Act and Washington's Consumer

---

[1] Often we refer to Pitsicalis as an individual because he acted individually during portions of the relevant time.

Protection Act. The district court, however, significantly reduced the jury's award and, alternatively, ordered a new trial on damages. On the claims of Experience Hendrix, we VACATE the district court's permanent injunction so that one paragraph in the injunction may be clarified and reissued. We REVERSE the court's reduction of the damages award. We AFFIRM the district court's decision to grant a new trial. Finally, we REMAND Experience Hendrix's claims for further proceedings.

For his part, Pitsicalis sought a declaratory judgment declaring that a third statute, Washington's Personality Rights Act, does not afford the heir of Jimi Hendrix any post-mortem publicity rights. The district court held that the Act does purport to give the heir of Jimi Hendrix post-mortem publicity rights, which Experience Hendrix would own. But the district court went on to hold that those portions of the Washington Personality Rights Act affording those publicity rights are unconstitutional. We AFFIRM the district court's decision interpreting the Act to give post-mortem publicity rights to Jimi Hendrix's heir, but REVERSE and VACATE the holding that the statute is unconstitutional as applied to the narrow circumstances presented here. Thus, we REMAND Pitsicalis's claims as well for further proceedings.

## I. Background

Experience Hendrix holds a number of trademarks associated with Jimi Hendrix, including the names "Hendrix" and "Jimi Hendrix" and Jimi Hendrix's signature, as well as logos incorporating a "headshot" of Hendrix. Experience Hendrix uses these trademarks to market, sell and license Hendrix-related merchandise, including apparel, posters, and artwork sold to the public through Internet websites and

brick-and-mortar retail stores throughout the United States, including the state of Washington.

Pitsicalis has also used Jimi Hendrix's celebrity status commercially. Pitsicalis owns, or has licenses to use, photographs and original pieces of art depicting Hendrix, as well as visual artwork created by Hendrix himself. In 2008, Pitsicalis began licensing the right to use these images to produce and sell Hendrix-related merchandise, including apparel, posters and household items. Like Experience Hendrix, Pitsicalis's licensees sold this merchandise over the Internet and in brick-and-mortar stores. Pitsicalis placed marks on his licensed products that used the names "Hendrix" and "Jimi Hendrix," as well as Jimi Hendrix's signature and a logo of Hendrix's headshot with a guitar. In conducting his business, Pitsicalis also used two websites with the domain names hendrixlicensing.com and hendrixartwork.com.

In March 2009, Experience Hendrix sued Pitsicalis under two statutes. First, Experience Hendrix alleged that Pitsicalis was infringing Experience Hendrix's trademarks in violation of the federal Lanham Act, *see* 15 U.S.C. §§ 1051–1127. Second, Experience Hendrix alleged that this trademark infringement also amounted to an unfair or deceptive trade practice proscribed by Washington's Consumer Protection Act ("WCPA"), *see* Wash. Rev. Code §§ 19.86.010–19.86.920. The district court granted Experience Hendrix partial summary judgment on the federal Lanham Act claim, concluding that Pitsicalis had infringed Experience Hendrix's trademarks. The court permanently enjoined Pitsicalis's infringing activity. At trial, a jury found that Pitsicalis's trademark infringement also amounted to an unfair or deceptive trade practice under the WCPA. Although the jury awarded Experience Hendrix damages under both statutes

totaling $1,723,300, the district court reduced the jury's award to $60,000.

Pitsicalis, in turn, asserted counterclaims against Experience Hendrix, seeking a judgment declaring that a third statute, Washington's Personality Rights Act ("WPRA"), Wash. Rev. Code §§ 63.60.010–63.60.080, does not provide Experience Hendrix with Hendrix's post-mortem publicity rights.[2]   The district court granted Pitsicalis summary judgment on these counterclaims, concluding that, while the WPRA does afford Jimi Hendrix post-mortem publicity rights belonging to Experience Hendrix, those portions of the WPRA providing those rights are unconstitutional.   These cross-appeals followed.

## II.  DISCUSSION

We address first Pitsicalis's counterclaims regarding the WPRA, before turning to Experience Hendrix's claims.

### A.  Jimi Hendrix's post-mortem publicity rights under the WPRA

#### 1.  Standing

Through his counterclaims, Pitsicalis sought a judgment declaring that 1) the WPRA "does not apply to publicity rights in Jimi Hendrix" and, therefore, 2) "it is possible to trade in original images and likenesses of Jimi Hendrix without creating a per se infringement of Experience

---

[2] Pitsicalis's wife, Christine Flaherty, is a party to Pitsicalis's counterclaims against Experience Hendrix, asserting the same claims as Pitsicalis.

[Hendrix's] trademark rights." As a threshold matter, Experience Hendrix contends that Pitsicalis lacks Article III standing to assert these declaratory judgment claims.

However, there is no doubt that an actual controversy exists between Pitsicalis and Experience Hendrix under the federal Lanham Act, in light of this ongoing litigation Experience Hendrix initiated against Pitsicalis. As a result of this litigation, Experience Hendrix has notified potential customers of Pitsicalis-licensed products as to Experience Hendrix's trademark rights. And there is no question about Experience Hendrix's standing to assert its Lanham Act claims against Pitsicalis for trademark infringement.

It is within this same litigation that Pitsicalis sought a judgment declaring that, under the WPRA, Experience Hendrix has acquired from Jimi Hendrix no post-mortem publicity rights, which Experience Hendrix could use to sue or threaten to sue Pitsicalis and his licensees, customers and potential customers. Experience Hendrix has in fact previously asserted Jimi Hendrix's publicity rights, albeit under an earlier version of the WPRA, in prior litigation which resulted in a final ruling that the initial version of the WPRA was inapplicable to Jimi Hendrix. That ruling was based upon choice-of-law principles which required application of New York law. New York was the domicile of Jimi Hendrix at the time of his death and it did not recognize these post-mortem rights. *Experience Hendrix, LLC v. Electric Hendrix, LLC*, No. C07-0338 TSZ, 2008 WL 3243896, at *2–*4 (W.D. Wash. Aug. 7, 2008) (unreported).

In 2008, however, the Washington legislature amended the WPRA to apply it "to all individuals and personalities, living and deceased, regardless of place of domicile or place

of domicile at time of death." Wash. Rev. Code § 63.60.010. The amended WPRA recognizes that every person "has a property right in the use of his or her name, voice, signature, photograph, or likeness." *Id.* That right existed or exists "before, on, or after June 11, 1998," the date the WPRA originally took effect, and does not expire upon a person's death. *Id.* §§ 63.60.010, 63.60.030(3). The amended WPRA recognizes such a right of publicity "regardless of whether the law of the domicile, residence, or citizenship of the individual or personality at the time of death or otherwise recognizes a similar or identical property right." *Id.* § 63.60.010. The WPRA protects such a right by providing, in part, that "[a]ny person who uses or authorizes the use of a . . . deceased . . . personality's name, voice, signature, photograph, or likeness, on or in goods, merchandise, or products entered into commerce in this state . . . without written or oral, express or implied consent of the owner of the right, has infringed such [personality] right." *Id.* § 63.60.050. As amended, then, the WPRA created a new possibility that Experience Hendrix would renew its efforts to assert Jimi Hendrix's post-mortem publicity rights against Pitsicalis, his licensees, customers, and potential customers.

The record here does not reveal any evidence that Experience Hendrix has explicitly threatened Pitsicalis, or his licensees, customers or potential customers with suit under the amended WPRA. But Pitsicalis alleged that Experience Hendrix, relying on rights that go beyond its federally protected trademarks, interfered with the sale, by one of Pitsicalis's licensees to the retailer Spencer's Gifts, of Pitsicalis-licensed Hendrix-related merchandise that did not

10   EXPERIENCE HENDRIX V. HENDRIXLICENSING.COM

infringe Experience Hendrix's trademarks.[3]  In light of all of these circumstances, Pitsicalis has a sufficiently legitimate concern that Experience Hendrix will renew its efforts to assert rights under the amended WPRA against Pitsicalis and related parties, given Experience Hendrix's past aggressive assertion of its rights related to Jimi Hendrix, and given the 2008 amendment to the WPRA that removes the previous impediment to Experience Hendrix's judicial efforts to enforce Jimi Hendrix's post-mortem publicity rights under that Act.  *See Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1157–58 & 1157 n.4 (9th Cir. 2007) (noting that, under the Ninth Circuit's "reasonable apprehension" test, concrete or explicit threats of litigation are not necessary for a plaintiff to have standing).

## 2.  The WPRA is constitutional as applied to the narrow set of non-speculative circumstances at issue here

The parties do not dispute that the amended WPRA recognizes post-mortem personality rights belonging to Jimi Hendrix, notwithstanding that 1) he died in 1970, before Washington originally enacted the WPRA; 2) he was domiciled in New York at the time of his death; and 3) New York law does not recognize a post-mortem right of publicity that would survive Jimi Hendrix's death and descend to his heir.  The parties also do not dispute that, under the WPRA, Experience Hendrix owns Jimi Hendrix's post-mortem

---

[3] The district court ruled, at the summary judgment stage of this litigation, that Pitsicalis had Article III standing to assert his declaratory judgment counterclaims.  Pitsicalis submitted adequate evidence to the district court to support his allegations that Experience Hendrix interfered with Pitsicalis's licensee's sale of non-infringing goods to Spencer's Gifts.

personality rights.  Notwithstanding that the WPRA thus on its face provides Experience Hendrix with Jimi Hendrix's post-mortem personality rights, the district court granted Pitsicalis summary judgment, declaring that the provisions of the WPRA that recognize those post-mortem personality rights are unconstitutional.  We review that decision de novo. *See Lopez-Valenzuela v. Cnty. of Maricopa*, 719 F.3d 1054, 1059 (9th Cir. 2013).  Under the narrow, non-speculative circumstances presented by this case, we disagree with the district court's ruling and accordingly reverse.

The narrow, non-speculative WPRA controversy before us, as Pitsicalis has alleged it, involves only (1) Pitsicalis's "reasonable apprehension" that Experience Hendrix will use the WPRA to stop his attempts to license unofficial Hendrix-related products for sale in Washington, and (2) Pitsicalis's licensee's unsuccessful attempt to introduce into Washington, through his licensee's dealings with Spencer's Gifts, Pitsicalis-licensed goods that bore Hendrix's image and likeness, but that did *not* carry marks that infringed Experience Hendrix's trademarks.

Washington's approach to post-mortem personality rights raises difficult questions regarding whether another state must recognize the broad personality rights that Washington provides.  But we need not resolve that issue.  Here, the limited controversy before us, as Pitsicalis has alleged it, involves only Experience Hendrix's interference with the sale in Washington of Pitsicalis-licensed, unofficial but non-infringing goods bearing Hendrix's likeness, as well as Pitsicalis's "reasonable apprehension" that Experience

Hendrix will attempt to stop such targeted sales in Washington in the future.[4]

### a.   Due Process/Full Faith and Credit Clauses

The district court held that applying Washington's WPRA here, instead of the law of New York, the state where Jimi Hendrix was domiciled at the time of his death, violated choice-of-law principles protected by the Due Process and Full Faith and Credit Clauses of the U.S. Constitution. Those Clauses require that, "for a State's substantive law to be selected [and applied to a particular case] in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312–13 (1981).[5]

Washington has sufficiently significant contacts with the actual, non-speculative controversy at issue here, which involves the loss of sales in Washington of Pitsicalis-licensed goods. Therefore, because these contacts are sufficient to give Washington an interest in applying its own law to this controversy, it is not arbitrary or unfair to apply the WPRA

---

[4] Pitsicalis argues that the WPRA has a much broader potential application. But the actual, non-speculative controversy before this court does not implicate those possible broader applications of the WPRA.

[5] In the choice-of-law context, the Supreme Court has directed courts to apply this analysis regardless of whether the constitutional challenge is brought under the Due Process or Full Faith and Credit Clause. *See Allstate*, 449 U.S. at 308 n.10. Therefore, we treat the Due Process and Full Faith and Credit arguments together.

EXPERIENCE HENDRIX V. HENDRIXLICENSING.COM    13

here.[6] *See id.; see also AT & T Mobility LLC v. AU Optronics Corp.,* 707 F.3d 1106, 1111 (9th Cir. 2013) (noting that "*Allstate* places only 'modest restrictions on the application of forum law,' and most commentators have viewed *Allstate* as setting a highly permissive standard" (internal citation omitted)).

### b.  Dormant Commerce Clause

The district court also held that applying the WPRA to this case would violate the dormant Commerce Clause, which limits the power of states to enact laws imposing substantial burdens on interstate commerce. *See Nat'l Ass'n of Optometrists & Opticians v. Harris,* 682 F.3d 1144, 1148–50

---

[6] The Southern District of New York, addressing Indiana's personality rights act, reached a contrary conclusion. Like the WPRA, Indiana's personality rights act "applie[s] to all sales made into Indiana regardless of the domicile of the famous person. It also purport[s] to bestow a right of publicity on famous people ('personalities') both living and deceased, regardless of their domicile on the date of their death." *Shaw Family Archives, Ltd. v. CMG Worldwide, Inc.,* 589 F. Supp. 2d 331, 333 (S.D.N.Y. 2008). The Southern District of New York concluded that

> whether a famous person already dead had managed to leave behind for his/her heirs any descendible right of publicity is not a function of Indiana law (unless, of course, the famous person died a domiciliary of Indiana). Instead it is a function of where that famous person happened to be domiciled at the time of death.

*Id.* We express no opinion about the appropriateness of this language under the facts presented in that case, but we decline to apply that absolute rule to the particular facts and claims at issue in the case before us. We conclude, instead, that Washington does have an interest in recognizing personality rights in all people, living and deceased, whose images may be traded upon within its borders.

14    EXPERIENCE HENDRIX V. HENDRIXLICENSING.COM

(9th Cir. 2012). The district court reasoned that, although the WPRA does not discriminate against out-of-state interests, to apply the WPRA to the controversy at issue here would, nevertheless, give the WPRA an impermissible extraterritorial reach, encompassing "a variety of transactions occurring 'wholly outside' Washington's borders." However, the limited, non-speculative controversy at issue here, does not affect transactions occurring wholly outside Washington. *Cf. Am. Trucking Ass'ns, Inc. v. Mich. Pub. Serv. Comm'n,* 545 U.S. 429, 434 (2005) (holding Michigan's flat tax on activities taking place exclusively within that state did not violate the dormant Commerce Clause). Nor does the record suggest that the application of the WPRA to the limited, non-speculative controversy at issue here would otherwise impermissibly burden interstate commerce. *See id.* at 434–38.

### 3. Conclusion as to Pitsicalis's declaratory judgment claims

For the foregoing reasons, we conclude that the WPRA can be applied constitutionally to the narrow controversy at issue here. We, therefore, reverse the district court's decision to grant Pitsicalis summary judgment on his declaratory judgment claims and we remand those claims to the district court with instructions for the district court to enter summary judgment in favor of Experience Hendrix. *See Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 553 (9th Cir. 2003) ("Even when there has been no cross-motion for summary judgment, a district court may enter summary judgment sua sponte against a moving party if the losing party has had a full and fair opportunity to ventilate the issues involved in the matter." (internal quotation marks omitted)).

EXPERIENCE HENDRIX V. HENDRIXLICENSING.COM    15

**B. Trademark infringement and deceptive trade practices**

We turn now to the claims Experience Hendrix asserted against Pitsicalis. Experience Hendrix's claims against Pitsicalis are premised on allegations that Pitsicalis infringed several of Experience Hendrix's trademarks related to Jimi Hendrix. Experience Hendrix asserted trademark infringement claims under two different statutes. First, Experience Hendrix brought a claim under the federal Lanham Act specifically alleging trademark infringement. The district court ultimately ruled as a matter of law that Pitsicalis had in fact infringed several of Experience Hendrix's trademarks.

Second, Experience Hendrix brought a claim against Pitsicalis under the Washington Consumer Protection Act ("WCPA"), which prohibits unfair or deceptive trade practices. Under the WCPA, Experience Hendrix alleged that Pitsicalis's conduct in infringing Experience Hendrix's trademarks amounted to an unfair or deceptive trade practice proscribed by the WCPA. A jury found that Pitsicalis had in fact committed an unfair trade practice by infringing Experience Hendrix's trademarks.

On appeal, Pitsicalis challenges only one aspect of the district court's conclusion that he is liable for infringing Experience Hendrix's trademarks: Pitsicalis argues that his domain names hendrixlicensing.com and hendrixartwork.com did not violate the federal Lanham Act by infringing Experience Hendrix's trademark "Hendrix." We uphold the district court's determination that the domain names did infringe Experience Hendrix's trademark "Hendrix."

Experience Hendrix sought several remedies to redress Pitsicalis's infringing conduct under both the federal Lanham Act and WCPA.   First, Experience Hendrix sought an injunction permanently enjoining Pitsicalis from further infringing Experience Hendrix's trademarks.   The district court entered such a permanent injunction, but Experience Hendrix, nevertheless, challenges language the court included in that injunction.   We conclude that one sentence of the injunction is sufficiently unclear to require a remand so the district court can clarify what conduct is and is not enjoined.

Experience Hendrix also sought damages, under both the federal Lanham Act and the WCPA, to compensate Experience Hendrix for Pitsicalis's past infringement.   The jury awarded Experience Hendrix several different measures of damages under both acts, totaling over $1.7 million.   The district court struck all but $60,000 of that award.   On appeal, Experience Hendrix seeks reinstatement of the jury's entire damages award.   We agree with Experience Hendrix that it was error for the district court, under Fed. R. Civ. P. 50(b)(3), to set aside all but $60,000 of the jury's award.   There was legally sufficient evidence to support that award.   However, the district court, alternatively, ruled that, if our court reinstated the jury's damages award, as we do here, then a new trial on damages is warranted under Rule 59.   We conclude that the district court's alternative ruling for a new trial was not an abuse of discretion and we, therefore, remand for a new trial limited to the issue of damages.

Finally, Experience Hendrix requested an award of attorney's fees in the amount of over $500,000.   The district court awarded a much smaller amount, $50,000.   Experience Hendrix challenges the court's denial of much of its attorney fee request.   We vacate the fee award and remand for the

district court's reconsideration because many of the factors on which the district court based its attorney fee decision have now changed.

### 1. Pitsicalis's liability under the federal Lanham Act for using domain names that infringed Experience Hendrix's trademark "Hendrix"

The district court granted Experience Hendrix partial summary judgment, concluding Pitsicalis had infringed several of Experience Hendrix's trademarks. On appeal, Pitsicalis challenges only one aspect of that ruling, arguing that the district court erred in determining that his domain names, hendrixlicensing.com and hendrixartwork.com, infringed Experience Hendrix's trademark "Hendrix." We review that determination de novo.[7] *See Lopez-Valenzuela*, 719 F.3d at 1059.

Pitsicalis defended his use of the trademark "Hendrix" in his domain names only as nominative fair use. "Nominative fair use applies where a defendant has used the plaintiff's mark to describe the *plaintiff's product*." *Fortune Dynamic,*

---

[7] We reject Experience Hendrix's contention that Pitsicalis waived this argument. While Pitsicalis stopped using these domain names after Experience Hendrix initiated this litigation, and he indicated in his pleadings before the district court that he did not intend to resume using these domain names, Pitsicalis expressly did not concede that his domain names infringed Experience Hendrix's trademarks, and he opposed Experience Hendrix's partial summary judgment motion by asserting arguments in defense of his use of "Hendrix" in the domain names. *Cf. San Luis & Delta-Mendota Water Auth. v. Salazar*, 638 F.3d 1163, 1174 n.7 (9th Cir. 2011) (rejecting argument that litigant had abandoned claim where opposing party's summary judgment motion placed the issue before the district court, the district court ruled on that issue, and the litigant adequately raised the issue on appeal).

*Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1031 (9th Cir. 2010) (internal quotation marks omitted). The district court rejected Pitsicalis's nominative fair use defense, concluding that Pitsicalis used "Hendrix" in his domain names to refer, not to Experience Hendrix's products (as is required for a nominative fair use defense), but only to Pitsicalis's own product or service, licensing and marketing Hendrix-related goods (which is not protected under the nominative fair use defense).[8]  On appeal, Pitsicalis does not argue that his domain names refer to Experience Hendrix's products. Nor does he contend that Jimi Hendrix is Experience Hendrix's product. *See Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1152–53 (9th Cir. 2002). We, therefore, affirm the district court's decision to enter partial summary judgment for Experience Hendrix.

## 2. Paragraph 5 of the permanent injunction is inadequate

After concluding that Pitsicalis infringed several of Experience Hendrix's trademarks, the district court issued injunctive relief under the Lanham Act, permanently enjoining Pitsicalis's infringing conduct. Experience Hendrix, the beneficiary of that injunction, argues that Paragraph 5 of the injunction fails to state clearly the terms of the injunction and does not describe in reasonable detail the acts that are and are not restrained. *See* Fed. R. Civ. P. 65(d)(1). We agree with Experience Hendrix in part.

---

[8] A defendant's use of a plaintiff's mark to describe only the defendant's goods is addressed by the "classic" fair use defense, but Pitsicalis did not assert a classic fair use defense here.

Briefly summarized, paragraph 1(iii)–(iv) of the challenged injunction permanently enjoins Pitsicalis from using Pitsicalis's "'guitar and headshot' logo or any similar mark, brand, or logo," and from using the Jimi Hendrix signature set forth in the injunction, "or any similar signature, mark, brand, or logo." But then, contrary to that provision, the first sentence in the challenged Paragraph 5 states that "[n]othing in this Permanent Injunction shall be construed as enjoining, prohibiting, or otherwise inhibiting [Pitsicalis] or any other entity or person from creating, reproducing, advertising, distributing, selling, or otherwise commercially trading in images or likenesses of Jimi Hendrix." These two provisions appear to be in some conflict or at least are ambiguous when read together. Thus, in this particular, the injunction does not clearly state what conduct is and is not restrained. We, therefore, vacate the permanent injunction and remand to the district court to revise the permanent injunction in order to clarify what conduct is and is not restrained.

We reject Experience Hendrix's challenges to the rest of Paragraph 5. The second sentence of Paragraph 5 states that "[t]he Court makes no ruling concerning whether . . . images or likenesses [of Jimi Hendrix] might be otherwise protected by copyright laws." The district court did not abuse its discretion in including this language in the permanent injunction, *see Skydive Ariz., Inc. v. Quattrocchi,* 673 F.3d 1105, 1110 (9th Cir. 2012), because this language only clarified that the district court had not ruled on any possible infringement of Experience Hendrix's copyrights because Experience Hendrix never alleged a *copyright* claim. *See id.* at 1116 ("An injunction should be tailored to eliminate *only the specific harm alleged.*" (internal quotation marks omitted)).

20   EXPERIENCE HENDRIX V. HENDRIXLICENSING.COM

The third and final sentence of Paragraph 5 states that "nothing in this Permanent Injunction shall be construed as enjoining, prohibiting, or otherwise inhibiting Defendants or any other entity or person from using the names or marks 'Jimi Hendrix' or 'Hendrix' to identify the subject of an associated image or the author or creator of an associated work of art." This language does not conflict with the injunction's earlier language specifically precluding Pitsicalis from using "Hendrix" in its business and domain names. Nor does this third sentence, contrary to Experience Hendrix's argument, affirmatively permit Pitsicalis or anyone else to infringe Experience Hendrix's trademarks "Hendrix" and "Jimi Hendrix." Instead, this language accurately indicates that the district court never ruled on Experience Hendrix's claims, abandoned in the district court, which alleged that Pitsicalis's use of the names "Hendrix" and "Jimi Hendrix" to describe the images Pitsicalis used in his unofficial Hendrix-related products infringed Experience Hendrix's trademarks "Hendrix" and "Jimi Hendrix." In this regard, the district court again properly limited the terms of the injunction to the specific claims before it, and then only to those claims on which Experience Hendrix prevailed. *See Skydive Ariz.,* 673 F.3d at 1116; *see also Toyota Motor Sales, U.S.A., Inc. v. Tabari,* 610 F.3d 1171, 1176 (9th Cir. 2010) (noting that court must tailor injunction "to eliminate only the specific harm alleged") (quoting *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1297 (9th Cir. 1992)); *cf. Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.,* 672 F.3d 1335, 1344 (Fed. Cir. 2012) (noting, in patent infringement case, the frequent admonishment that district courts are "not to issue sweeping injunctions against potentially infringing activities . . . , but to restrict the scope of the injunction to the particular adjudicated infringing activity").

In sum, the first sentence in Paragraph 5 of the permanent injunction—stating that "[n]othing in this Permanent Injunction shall be construed as enjoining, prohibiting, or otherwise inhibiting Defendants or any other entity from creating, reproducing, advertising, distributing, selling, or otherwise commercially trading in images or likenesses of Jimi Hendrix"—conflicts with the earlier provisions of the injunction restraining Pitsicalis from using a Jimi Hendrix "guitar and headshot" logo or any similar mark, brand or logo. We, therefore, vacate the permanent injunction and remand to the district court to clarify what conduct is and is not enjoined.

### 3. Damages under both the federal Lanham Act and the WCPA

In addition to seeking an injunction permanently enjoining Pitsicalis from infringing Experience Hendrix's trademarks, Experience Hendrix also sought damages to compensate it for Pitsicalis's past infringement. There are two related issues involving damages that we must address, one involving the district court's order entering a greatly reduced damages award under Fed. R. Civ. P. 50(b)(3), and the other involving the district court's alternative order granting a new trial on damages under Fed. R. Civ. P. 59.[9]

---

[9] During trial, Pitsicalis made a Rule 50(a) motion for judgment as a matter of law. *See EEOC v. Go Daddy Software, Inc.,* 581 F.3d 951, 961 (9th Cir. 2009). That motion was sufficient to preserve Pitsicalis's renewed motion for judgment as a matter of law, under Rule 50(b)(3), made after the jury's verdict. The district court granted that Rule 50(b)(3) motion, striking most of the jury's damages award. We refer to Pitsicalis's post-verdict motion, as well as the district court's order granting that motion, as being made under Rule 50(b)(3). In addition to his Rule 50(b)(3) motion, Pitsicalis alternatively sought a new trial under

As to the first damages issue, the jury awarded Experience Hendrix a total of over $1.7 million, which represented measures of damages under both the federal Lanham Act and the WCPA. The district court, however, struck most of that award under Fed. R. Civ. P. 50(b)(3) and entered a substantially reduced damages award. Experience Hendrix appeals that decision. As explained in greater detail below, the legal standard applicable to Rule 50(b)(3) motions requires that a court uphold the jury's award if there is any legally sufficient basis to do so. Application of that particular standard here dictates that we reverse the district court and reinstate the jury's entire damages award.

The second issue regarding damages involves the same damages awards, but this time under Rule 59's new-trial provisions. Rule 59 provides a different legal standard for both the district court and for us. Regarding a Rule 59 motion, the district court can weigh the evidence, make credibility determinations, and grant a new trial for any reason necessary to prevent a miscarriage of justice. The appellate court reviews the district court's determination of these matters for an abuse of discretion. Those standards require that we affirm here the district court's grant of a new trial under Rule 59, even though we reverse the district court's decision to grant Pitsicalis judgment as a matter of law under Rule 50(b)(3).

---

Fed. R. Civ. P. 59. Rule 50(c)(1) requires a court granting a Rule 50(b)(3) motion for judgment as a matter of law, as the district court did here, to rule conditionally on any Rule 59 new-trial motion. We refer to Pitsicalis's new trial motion, as well as the district court's order conditionally granting that motion, as being made under Rule 59.

EXPERIENCE HENDRIX V. HENDRIXLICENSING.COM    23

### a. Overview of the jury's award of damages under the federal Lanham Act and the WCPA

Based on Pitsicalis's infringing Experience Hendrix's trademarks in violation of the Lanham Act, the jury awarded Experience Hendrix 1) $60,000, representing the profits Pitsicalis made from licensing his infringing goods; and 2) $306,650 to compensate Experience Hendrix for the profits Experience Hendrix lost because of Pitsicalis's infringing conduct.[10] *See* 15 U.S.C. § 1117(a) (providing that party establishing trademark infringement can recover the "defendant's profits" from infringing the trademark and "any damages sustained by the plaintiff").

Finding that this same trademark infringement also amounted to an unfair or deceptive trade practice under the WCPA, the jury further awarded Experience Hendrix a total of $1,365,650 in damages under that statute. The WCPA award represented apparently the same $306,650 in lost profits for Experience Hendrix as a result of Pitsicalis's unfair trade practices, $750,000 for injury to Experience Hendrix's reputation, and $300,000 for Experience Hendrix's loss of goodwill.

After the jury's verdict, the district court granted Pitsicalis's Fed. R. Civ. P. 50(b)(3) motion and struck, as unsupported by the evidence, all of the damages awarded except the $60,000 award under the Lanham Act for the profits Pitsicalis made from infringing Experience Hendrix's

---

[10] "[T]he recovery of both plaintiff's lost profits *and* disgorgement of defendant's profits is generally considered a double recovery under the Lanham Act." *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994).

trademarks.[11]  Alternatively, the district court conditionally granted Pitsicalis a new trial under Fed. R. Civ. P. 59, in the event this court reinstated the jury's damages award.  Here, we reinstate the damages award, but then affirm the district court's alternative ruling under Rule 59 that the award of damages should be vacated and set for a new trial.

At first glance, our resolution—first reinstating the jury's damages award and then affirming the district court's decision to have a new trial on damages—may seem contradictory.  But our decision is consistent with the differing standards that governed the district court's consideration of Pitsicalis's Rule 50(b)(3) and Rule 59 motions, as well as the differing standards by which we review the district court's determination of those motions.

In considering a Rule 50(b)(3) motion for judgment as a matter of law, the district court must uphold the jury's award if there was any "legally sufficient basis" to support it.  *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 859 (9th Cir. 2002).  In making that determination, the district court considers all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party, Experience Hendrix; the court may not make any credibility determinations or reweigh the evidence.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  Because we review the district court's Rule 50(b)(3) decision de novo, we apply those same legal standards on appeal.  *See Go Daddy Software*, 581 F.3d at 961.

---

[11] The jury's award of $60,000 for Pitsicalis's profits earned by infringing Experience Hendrix's trademarks is not challenged on appeal.

EXPERIENCE HENDRIX V. HENDRIXLICENSING.COM    25

Unlike with a Rule 50 determination, the district court, in considering a Rule 59 motion for new trial, is not required to view the trial evidence in the light most favorable to the verdict. Instead, the district court can weigh the evidence and assess the credibility of the witnesses. *See Kode v. Carlson*, 596 F.3d 608, 612 (9th Cir. 2010) (per curiam). The district court also is not limited to the grounds a party asserts to justify a new trial, but may sua sponte raise its own concerns about the damages verdict. *See* Fed. R. Civ. P. 59(d). Ultimately, the district court can grant a new trial under Rule 59 on any ground necessary to prevent a miscarriage of justice. *See Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990). We afford considerable deference to the district court's new trial decision and will not overturn the district court's decision to grant a new trial absent an abuse of discretion, meaning "only when the district court reaches a result that is illogical, implausible, or without support in the inferences that may be drawn from the record." *Kode*, 596 F.3d at 612.

With these different legal standards in mind, we consider first the district court's Rule 50(b)(3) decision to vacate most of the jury's damages award, and then we address the district court's Rule 59 new trial decision.

### b. The district court erred in striking under Fed. R. Civ. P. 50(b)(3) most of the damages awarded by the jury

To recap, the district court, acting under Rule 50(b)(3), struck the jury's award of lost profits under both the federal Lanham Act and the WCPA, and it struck the damages awards, made under the WCPA, for loss of goodwill and reputation. We review the district court's determination de

novo, and we will uphold the jury's award if there was any "legally sufficient basis" to support it.  *Costa*, 299 F.3d at 859.

### i.   The jury's damages award for Experience Hendrix's lost profits

For the amount of profits Experience Hendrix lost as the result of Pitsicalis's infringing conduct, the jury returned two identical awards of $306,650, one under the federal Lanham Act and one under the WCPA.[12]  On appeal, no one contends that a different analysis applies to the calculation of lost profits under the WCPA than applies under the federal Lanham Act.  In fact, "the parties already stipulated that [lost profits under the WCPA] are the same as the Lost Profits under the Lanham Act for the purposes of awarding double recovery."  Therefore, we address here the jury's identical awards for lost profits under the Lanham Act and the WCPA together.   In doing so, we conclude that, under the circumstances of this case and in light of our standard of review, the evidence was sufficient to permit a reasonable jury to calculate the profits Experience Hendrix lost due to Pitsicalis's infringing conduct. *See Skydive Ariz.*, 673 F.3d at 1112 ("In a trademark action, the nature of the proof required to support a jury award depends on the circumstances of the case . . . .").[13]

---

[12] The parties and the district court agreed before the jury's verdict that Experience Hendrix could not recover twice for its lost profits.  We will discuss this later in the opinion, as one of the bases for granting a new trial.

[13] Our review of the record does not reveal any evidence that would support duplicative damages of $306,650 under *both* the Lanham Act and the WCPA.  Were that the only problem with the jury's damages award,

EXPERIENCE HENDRIX V. HENDRIXLICENSING.COM    27

The district court instructed jurors that they were to calculate profits "by deducting all expenses from gross revenue." It was Experience Hendrix's burden to prove its damages. *See Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993) (applying 15 U.S.C. § 1117(a)). In striking the jury's award for Experience Hendrix's lost profits, the district court held that, while Experience Hendrix had presented evidence of its lost revenue, it had failed to offer any evidence as to its expenses, which the jury was required to deduct from the lost revenue in order to calculate Experience Hendrix's lost profits.

During the jury instruction conference, after the close of evidence, Experience Hendrix acknowledged that it had not presented the jury with any evidence of its expenses. This was because Experience Hendrix mistakenly believed that it bore the burden of proving only its lost revenue and that, once it had made that showing, the burden shifted to Pitsicalis to prove any expenses that jurors should deduct in order to calculate Experience Hendrix's lost profits. The Lanham Act applies this burden-shifting framework to proof of the *defendant infringer's lost profits*. *See* 15 U.S.C. § 1117(a). But the burden remained with Experience Hendrix, as the plaintiff, to prove its actual damages, including *its own lost profits*. *See Lindy Pen*, 982 F.2d at 1407.

Notwithstanding Experience Hendrix's confusion as to the burdens of proof, there was sufficient evidence before the jurors from which they could calculate the profits Experience Hendrix lost due to Pitsicalis's infringing conduct. That

it could be easily cured. But because the damages awarded are rife with ambiguity and duplicity, we agree with the district court that the best solution is simply to grant Rule 59 relief for a new trial on damages.

evidence included the following: There was undisputed evidence that, at the same time that Pitsicalis was licensing his infringing goods, Experience Hendrix suffered a significant decline in its own licensing revenue earned from products similar to Pitsicalis's infringing merchandise. There was also testimony describing the nature of licensing revenue generally as a licensee's payment to the licensor of a percentage of the licensee's revenue in return for the use of the licensor's intellectual property. In addition, the jury had before it financial documents, including Exhibit 60, which summarized and compared Experience Hendrix's licensing revenue from 2006 through 2009. Exhibit 60 referred to Experience Hendrix's licensing revenue as "total income," "gross profits," "net ordinary income," and "net income," without reflecting any deductions from the licensing revenue for expenses. The terms "net income" and "net ordinary income" in Exhibit 60 suffice to support the jury's finding that those figures were after adjustment for costs and were, as represented, net income. Testimony describing licensing revenues generally further suggested that there were no incremental costs saved in connection with the loss of that revenue attributed to Pitsicalis. From this evidence, then, a reasonable jury could have found that, because much of Experience Hendrix's revenue was licensing revenue, there were no incremental expenses that the jury had to deduct from the relevant licensing revenue before jurors calculated Experience Hendrix's lost profits, or if there were incremental costs, they had already been taken into account in preparing Exhibit 60. *Cf. DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1223–24 (9th Cir. 2010) (recognizing that the "nature of the proof" as to damages under 15 U.S.C. § 1117(a) "depends on the circumstances of the case," and upholding a jury's award of actual damages, based in part on testimony and financial statements indicating a decline in

EXPERIENCE HENDRIX V. HENDRIXLICENSING.COM    29

"gross profits").    There was, thus, sufficient evidence presented at trial to enable the jury's award of Experience Hendrix's lost profits to survive the Rule 50(b)(3) motion. So we conclude that the district court erred in granting the Rule 50(b)(3) motion to vacate the damages of $306,650 in Experience Hendrix's lost profits.[14]

### ii.    The jury's damages award for Experience Hendrix's loss of goodwill and reputation

The jury also awarded Experience Hendrix $750,000 in damages for harm Pitsicalis caused to its reputation and $300,000 for the loss of goodwill.    The jury awarded these measures of damages only under the WCPA.  *See Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.,* 858 P.2d

---

[14] The district court also granted Pitsicalis Rule 50(b)(3) relief from the jury's lost profits award for two other reasons.  First, the district court held that the evidence was insufficient to establish that Pitsicalis's infringing conduct had actually *caused* any of Experience Hendrix's lost profits. Second, the district court held that, even if there was evidence to support the jury's finding that Pitsicalis's infringing conduct caused some of the drop in Experience Hendrix's profits, there was insufficient evidence to support the jury's awarding Experience Hendrix the entire *amount* of $306,650.  Because, as we have already explained, the evidence presented at trial provided a "legally sufficient basis" to support the jury's damages award for lost profits, *Costa,* 299 F.3d at 859, we also reject these other grounds for the district court to grant Pitsicalis Rule 50(b)(3) relief from the jury's damages award for lost profits.  Moreover, it does not appear that the district court, in any event, had authority to grant Pitsicalis Rule 50(b)(3) relief on these alternate grounds because Pitsicalis did not raise them in either his pre-verdict Rule 50(a) or his post-verdict Rule 50(b)(3) motion.  It appears that the district court sua sponte raised these two alternative grounds for Rule 50(b)(3) relief.  *See Murphy,* 914 F.2d at 185–86 (reversing entry of judgment notwithstanding the verdict, under prior version of Rule 50(b), on a ground that the district court raised sua sponte).

1054, 1063 (Wash. 1993) (en banc) ("[D]amage to business reputation and loss of goodwill are [also] compensable damages under the [W]CPA."). The district court, in granting Pitsicalis's Rule 50(b) motion, struck these awards of damages after concluding there was no evidence to support them. Again, we reverse in light of the standards governing Rule 50(b)(3).

There was significant evidence to support the jury's finding of the fact that Pitsicalis's deceptive trade practices injured Experience Hendrix's reputation and goodwill. As to the amount of that harm, the jury had evidence regarding the total licensing revenue that Experience Hendrix earned during the period of time before and during Pitsicalis's infringing activity. From this information, jurors could have calculated the amount of harm Pitsicalis caused to Experience Hendrix's business reputation and goodwill "with reasonable certainty." *Lewis River Golf, Inc. v. O.M. Scott & Sons,* 845 P.2d 987, 990 (Wash. 1993) (en banc); *see Wash. State Physicians,* 858 P.2d at 1071 ("Damages for loss of professional reputation are not the type of damages which can be proved with mathematical certainty and are usually best left as a question of fact for the jury.") Specifically, this evidence indicated that Experience Hendrix's overall licensing revenue declined by $1,022,351.70 during 2009, the period during which Pitsicalis was infringing Experience Hendrix's trademarks. That information provided a legally sufficient basis for the jury's award of a total of $1,050,000 in damages for harm to Experience Hendrix's reputation and goodwill,[15]

---

[15] An award based on Experience Hendrix's decline in total licensing revenue would seemingly duplicate, in part, the jury's damages award for the profits Experience Hendrix lost on licensing revenue specifically for

and thus permitted these damage awards to survive Pitsicalis's Rule 50(b)(3) motion.[16]

### c. The district court did not abuse its discretion in conditionally granting Experience Hendrix a new trial on damages

The district court conditionally granted Pitsicalis a new trial on damages under both the federal Lanham Act and the WCPA in the event, which has now occurred, that this court reinstated the jury's damages awards.  *See* Fed. R. Civ. P. 50(c)(1), 59.  We affirm the district court's decision granting a new trial, in light of the significant deference we owe the district court's determination that a new trial is warranted. *See Kode*, 596 F.3d at 612.  Unlike with the district court's Rule 50(b) analysis, the district court, in considering Pitsicalis's motion for a new trial, was not required to draw all inferences in favor of the verdict and could reweigh the evidence and make credibility determinations.  *Id.*  The district court also was not limited to the grounds Pitsicalis raised in support of his new trial motion, but instead could (and did) sua sponte raise its own concerns about the damages award.  *See* Fed. R. Civ. P. 59(d).  And our standard of review

---

goods similar to Pitsicalis's infringing goods.  The parties do not argue about this, but we discuss it as a basis for granting a new trial.

[16] The district court, acting sua sponte, alternatively struck these damages for loss of reputation and goodwill after concluding that the jury's verdict in this regard was contrary to the court's supplemental instruction to jurors that these two measures of damages were "essentially the same thing."  That reason, however, cannot support Rule 50(b) relief for Pitsicalis because he did not raise that ground in either his pre-verdict Rule 50(a) motion or in his post-verdict motion for Rule 50(b) relief.  *See Murphy*, 914 F.2d at 186.

of the district court's ruling also differs from the de novo standard governing our review of a district court's Rule 50(b)(3) decision. The district court's decision on a Rule 59 motion for a new trial "will be overturned on appeal only for abuse of discretion." *Kode*, 596 F.3d at 611.

The district court can grant a new trial under Rule 59 on any ground necessary to prevent a miscarriage of justice. *See Murphy*, 914 F.2d at 187. In this case, the district court specifically concluded that a new trial was warranted because the damages awards were "against the clear weight of the evidence and the product of speculation, error, and disregard of the Court's instructions." "We must uphold the district court if any of its grounds for granting a new trial are reasonable." *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999). For the following reasons, we conclude the district court's reasons are sufficient to warrant a new trial on both Experience Hendrix's lost profits and damages for its loss of reputation and goodwill.

### i.   New trial on damages for lost profits

The district court concluded that the jury's damages award of $306,650, representing the profits Experience Hendrix lost as the result of Pitsicalis's infringement of Experience Hendrix's trademarks, was against the clear weight of the evidence. Briefly stated, the district court was not convinced that the references on Experience Hendrix's Exhibit 60 to "total income," "gross profits," "net ordinary income," and "net income" should be equated to profits, without further evidence indicating that there were, in fact, no expenses that should be deducted from Experience Hendrix's licensing revenue before it is deemed a measure of lost profits. This determination alone might not have been

sufficient to support the district court's decision to grant a new trial on damages. *See Ace v. Aetna Life Ins. Co.,* 139 F.3d 1241, 1248 (9th Cir. 1998) (recognizing that a more stringent standard of review applies to grants of new trials predicated on insufficiency of the evidence). But the district court also disbelieved the testimony of one of Experience Hendrix's corporate officers, Robert Hendrix, that 77% of Experience Hendrix's drop in licensing revenues during the relevant time period, 2009, was the result of Pitsicalis's infringing products and not attributable to the general market economic downturn that occurred during this same time period. The district court based its credibility determination in part on the fact that Experience Hendrix's licensing revenues on its other products, which would not have been affected by Pitsicalis's infringing goods, fell by more than 23% during this same time. We cannot say that the district judge, who heard the evidence presented at trial, abused its discretion in ordering a new trial on lost profits on these bases.[17]

---

[17] In upholding the district court's decision to grant a new trial in a criminal case, the Ninth Circuit noted that an appellate court's deference to the district court's new trial decision is appropriate because "[c]ircuit judges, reading the dry pages of the record, do not experience the tenor of the testimony at trial. The balance of proof is often close and may hinge on personal evaluations of witness demeanor. And, because an order directing a new trial leaves the final decision in the hands of the jury, it does not usurp the jury's function . . . ." *United States v. Alston,* 974 F.2d 1206, 1212 (9th Cir. 1992). Those reasons also bolster our deferring to the district court's new trial determination here.

### ii.  New trial on damages for loss of reputation and goodwill

As previously stated, the jury awarded Experience Hendrix, under the WCPA, $750,000 for harm to its reputation and $300,000 for the loss of goodwill.  The district court granted a new trial on these damages as well, concluding that these damage awards were both contrary to the clear weight of the evidence and contrary to the district court's instruction to the jury that these measures of damages were "essentially the same thing."

The evidence Experience Hendrix presented at trial to support the amount of these damages, though sufficient to provide a legal basis for the jury's award, was minimal at best.  Further, the jury's award of differing amounts of damages for loss of reputation ($750,000) and for loss of goodwill ($300,000) directly contradicted the court's supplemental instruction to jurors that these two measures of damages are "essentially the same."  *Cf. Jorgensen v. Cassiday*, 320 F.3d 906, 918 (9th Cir. 2003) (considering the merits of an argument that the jury disobeyed trial court's instructions, before rejecting that argument, concluding that "[t]he jury did not disobey the court's instructions and did not return a verdict that was unreasonable or unfair").

Moreover, reading the court's supplemental instruction in light of the district court's instructions as a whole, jury confusion appears likely.  *See Overseas Private Inv. Corp. v. Metro. Dade Cnty.,* 47 F.3d 1111, 1116 (11th Cir. 1995) (granting new trial on damages where jury instructions were confusing, resulting in a confusing damages award).  The court's original instructions told jurors to consider these two measures of damages separately, and the verdict form

provided separate places to insert damages for loss of reputation and damages for loss of goodwill. The court further instructed jurors to award each measure of damages to which they found Experience Hendrix was entitled, without regard to whether any award was duplicative, because the court would later correct any duplication of damages. And when, during the jury's deliberations, the court told jurors that harm to reputation and loss of goodwill were "essentially the same thing," the court also reminded jurors that all of the court's previous instructions, including the instruction to consider each measure of damages separately, remained important. These instructions, considered together, likely fostered confusion among jurors.

Based on the minimal evidence of the amount of harm Pitsicalis's infringing activity caused to Experience Hendrix's reputation and goodwill, the fact that the jury's award of two different amounts for these damages directly contradicted the court's supplemental jury instruction that these measures of damages were "essentially the same," and the confusion likely created by the instructions as a whole, we cannot say that the district court abused its discretion in granting a new trial on these measures of damages.

### iii. Duplication of damages awards

In addition to the district court's concerns about the damages awards, we also have concerns about the duplicative nature of several of the awards. Those apparent duplicative awards include damages, under the Lanham Act, for both Pitsicalis's profits earned from infringing Experience Hendrix's trademarks and Experience Hendrix's profits lost due to Pitsicalis's infringing activity; an award of Experience Hendrix's lost profits under both the Lanham Act and the

WCPA; and an award of lost licensing revenue specifically for Experience Hendrix's goods that are similar to Pitsicalis's infringing merchandise, which appears to have been double-counted as part of the total award for lost reputation and goodwill.  The district court instructed jurors to consider and award each measure of damages to which Experience Hendrix was entitled, without regard to the duplicative nature of any of the awards, because the trial court would later eliminate any duplication.  Here, however, other than the two identical lost profit awards under the Lanham Act and the WCPA, the district court did not address any possible duplication of remedies.  While we have discretion to remand for the district court to correct duplicative awards, *see Ace*, 139 F.3d at 1248, we conclude that doing so here would still not address all of the concerns about the damages awards that the district court raised, and that we share.  We, therefore, defer to the district court's determination that a new trial on damages is warranted.

### iv.  Conclusion as to new trial

For the foregoing reasons, then, we uphold the district court's decision to order a new trial on damages, other than the $60,000 in damages on Pitsicalis's profits for trademark infringement under the Lanham Act.[18]  Our decision is bolstered by the conclusion that a new trial on these measures of damages would be just under these circumstances. Experience Hendrix's supporting evidence underlying each of these measures of damages, while providing a legally

---

[18] Because the district court did not strike the jury's $60,000 award under the Lanham Act for the profits Pitsicalis earned by infringing Experience Hendrix's trademarks, that damages award remains.  That measure of damages, then, is not included in the new trial on damages.

sufficient basis to survive a Rule 50(b)(3) directed verdict, was minimal and, in the eyes of the district court, not very credible.  Further, the jury's award of damages for loss of reputation and goodwill contradicted the court's supplemental instruction that those measures of damages are "essentially the same."  And the jury instructions, especially on the damages for loss of reputation and goodwill, were likely confusing.  Finally, the apparent duplication of a number of these damages awards, which the district court told jurors it would correct, raises other concerns about the damages awarded.  In light of the numerous concerns that the district court had with the damages award, which we share, we agree that the just result is a new trial on these particular measures of damages.

### 4.  Attorney's fees under the WCPA

Finally, the district court awarded Experience Hendrix attorney's fees under the WCPA, *see* Wash. Rev. Code § 19.86.090, but reduced that requested fee from $504,673 to $50,000.  The district court did so for several reasons, including the following: The WCPA claim was only one of six claims Experience Hendrix asserted against Pitsicalis, and only one of two claims on which Experience Hendrix prevailed; Experience Hendrix did not establish any damages under the WCPA; and Experience Hendrix sought fees for motions and pleadings on which it did not prevail or which did not pertain to its WCPA claim.  While no doubt some of the district court's reasons for reducing the requested fee award remain valid, our decision here has changed several of the factors on which the district court relied to reduce the fee request.  We, therefore, vacate the fee award in its entirety and remand to permit the district court to reconsider Experience Hendrix's fee request in full.  *See Silver Sage*

*Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 826 (9th Cir. 2001).[19]

### III. CONCLUSION

For the foregoing reasons, we REVERSE the district court's determination that Washington's Personality Rights Act is unconstitutional and REMAND Pitsicalis's declaratory judgment claims pertaining to the WPRA with instructions to enter summary judgment on those claims in favor of Experience Hendrix. We AFFIRM the district court's decision granting Experience Hendrix partial summary judgment on its claim that Pitsicalis's use of "Hendrix" in its domain names infringed Experience Hendrix's mark "Hendrix." We VACATE the permanent injunction and REMAND so the district court can revise language in the injunction to clarify what conduct is and is not enjoined. We REVERSE in its entirety the district court's Rule 50(b)(3) decision to strike most of the jury's award of damages, under both the federal Lanham Act and Washington's Consumer Protection Act. We AFFIRM the district court's order granting a new trial on damages under both of these statutes and REMAND for a new trial on such damages. And we VACATE the district court's award of attorney's fees under the WCPA and REMAND the fee request for further proceedings consistent with this decision. Each side shall bear its own costs.

**AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART AND REMANDED.**

---

[19] In its briefs, Experience Hendrix requests an award of appellate attorney's fees under the WCPA. Such a request must be made by separate motion pursuant to 9th Cir. R. 39-1.6, and so we do not consider that request here.

RAWLINSON, Circuit Judge, concurring in part and dissenting in part:

I concur in much of the majority's opinion.  I agree with the majority's conclusion that the district court erred when it determined that the Washington Personality Rights Act (WPRA) is unconstitutional.  I also agree that the district court correctly determined that Defendant Pitsicalis's use of "Hendrix" infringed Experience Hendrix's "Hendrix" mark.  I concur in the determination that the permanent injunction should be vacated and remanded for clarification of precisely what conduct is permanently enjoined.  In addition, I join the majority's conclusion that the jury's damages award was improperly decreased by the district court.  Finally, but for different reasons as discussed below, I share the majority's view that the district court's award of attorney's fees should be vacated and remanded.

Although there is much of the majority opinion with which I agree, I absolutely and positively disagree with the majority's conclusion that a new trial is warranted on the issue of damages.  In my view, the majority opinion on this point, like the district court decision, strays from the appropriate standard of review and essentially re-tries the case.  I respectfully dissent from that portion of the majority opinion.

It is helpful at the outset to outline the standard of review that governed the district court's decision and governs our review of that decision.  That standard of review authorizes a new trial only if the record contains *no* evidence in support of the jury's verdict.  *See E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 962 (9th Cir. 2009).  This standard incorporates considerable deference to the jury's

determination. *See Kode v. Carlson*, 596 F.3d 608, 612 (9th Cir. 2010) (per curiam). The majority opinion adheres to this standard when resolving Pitsicalis's motion for judgment as a matter of law, but completely abandons this standard when considering Pitsicalis's motion for a new trial.

As the majority acknowledges, the determination that sufficient evidence supported the jury verdict for the purposes of Pitsicalis's Rule 50(a) motion undermines the opposite conclusion reached by the majority in resolving Pitsicalis's Rule 50(b) motion. *See Majority Opinion*, p. 24. *See also Go Daddy Software*, 581 F.3d at 962 (instructing that a new trial is warranted "only if the record contains no evidence in support of the verdict") (citation omitted).

It cannot be disputed that damages evidence was presented for the jury's consideration. Robert Hendrix, Chief Operations Officer for Plaintiff Experience Hendrix testified regarding the dramatic decrease in royalty payments in 2009, at precisely the same time Pitsicalis was infringing the "Hendrix" trademark by selling counterfeit Hendrix items. Robert described 2009 as the year "the bottom fell out."

Referring to a trial exhibit, Robert pointed out the dramatic decrease in royalties from one licensee in 2008–09 to demonstrate the extent of the damages caused by Pitsicalis's infringement. In 2006, Experience Hendrix received $384,000 in royalties from the licensee. In 2007, Experience Hendrix was paid $394,000 in royalties. Royalties decreased to $262,000 in 2008, and plummeted to $40,000 in 2009. Robert also described decreased royalties from five licensee companies in his testimony: "I did $514,000 in 2008, and in 2009, I did $116,000 of licensing of

merchandising from these five companies.  That's almost a $400,000 drop in revenue."

In response to the suggestion that the decreased royalties were attributable to the recession, Robert noted that historically Experience Hendrix had "maintained" its sales numbers during the previous recession, when other licensors of trademarked items were experiencing a decrease in sales due to the recession.  For that reason, Robert did not attribute the dramatic decrease in royalties to the recession.

Robert also testified that its licensees were unable to sell merchandise in brick and mortar stores such as J.C. Penney in 2009, once Pitsicalis had flooded the store shelves with infringing merchandise.  This testimony was consistent with the dramatic decrease in royalty payments in 2009, after Experience Hendrix realized increased royalties "every single year until 2008."    Robert Hendrix estimated that approximately seventy-seven percent of the decrease in royalties was attributable to Pitsicalis's infringing activity.

Richard Hendrix's testimony was corroborated by Richard Yalch, Experience Hendrix's expert witness, and a thirty-seven-year Ph.D. professor of marketing at the University of Washington.  Dr. Yalch confirmed that lost royalties due to Pitsicalis's infringing sales constituted damages to Experience Hendrix.

Despite this unrefuted testimony, the district court and the majority have concluded that the jury's award of damages was against the weight of the evidence.  Yet, the majority acknowledges this undisputed evidence of the significant decline in Experience Hendrix's licensing revenue and concedes that this evidence was sufficient to allow the jury to

calculate Experience Hendrix's lost profits. *See Majority Opinion*, pp. 27–28. The majority's acknowledgment simply cannot be reconciled with the standard of review we must apply to the district court's ruling. *See United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999) (noting that a district court abuses its discretion in granting a new trial "if the jury's verdict is not against the clear weight of the evidence") (citation omitted); *see also Ace v. Aetna Life Ins. Co*., 139 F.3d 1241, 1248 (9th Cir. 1998), *as amended* (explaining that a jury verdict may be set aside on the basis of insufficient supporting evidence only if it "is against the great weight of the evidence or it is *quite clear* that the jury has reached a *seriously erroneous result*") (citations omitted) (emphases added). We have characterized this standard as "stringent." *Id*. (citation omitted).

According to the majority, the district court did not believe Robert Hendrix's testimony regarding Experience Hendrix's lost revenue. *See Majority Opinion*, p. 33. However, the district court did not rule that Robert Hendrix lacked credibility. Rather, the district court interpreted his testimony differently than the jury, which the court is not permitted to do. *See 4.0 Acres of Land*, 175 F.3d at 1139 ("[A] district court may not grant . . . a new trial merely because it would have arrived at a different verdict. . . .) (citation omitted).

The majority also concludes that a new trial is warranted due to the confusing jury instructions. *See Majority Opinion*, pp. 34–35. The majority opinion focuses on the instruction from the district court that damages for injury to reputation and loss of goodwill "were essentially the same thing." *Id*. (internal quotation marks omitted). But "essentially the same thing" and "exactly the same thing" are different concepts.

EXPERIENCE HENDRIX V. HENDRIXLICENSING.COM    43

And the jury could have reasonably awarded damages for injury to reputation *and* loss of goodwill under the district court's instruction. *See WMX Technologies v. Miller, Inc.*, 197 F.3d 367, 374 (9th Cir. 1999) ("Reputation is *not* the equivalent of the goodwill of a business. . . .") (emphasis added); *id.*, ("[T]he goodwill of a business is its value as a going concern . . ."). Robert Hendrix's testimony established that Pitsicalis's infringement not only damaged Experience Hendrix's reputation for providing authentic Jimmy Hendrix items, but also decreased the value of Experience Hendrix as a going concern. *See id.*

The majority concludes that a new trial is warranted due to "likely" jury confusion stemming from the district court's instructions. *See Majority Opinion*, pp. 34–35. However, as discussed above, the jury's verdict was supported by the evidence and consistent with the court's instruction. In any event, as the majority recognizes, to the extent the damages award is duplicative, we could remand for correction of the award rather than requiring a new trial. *See Majority Opinion*, p. 36.

In sum, applying the proper standard should result in retention of the jury's verdict, including the award of damages. This might be a different case if Pitsicalis had submitted some evidence to refute the damages evidence submitted by Experience Hendrix. However, in the absence of countervailing evidence from Pitsicalis, there was nothing for the district court to weigh when deciding the motion for a new trial. All the evidence was on Experience Hendrix's side of the scale, and supported the jury's verdict. For that reason, I would reverse the district court's grant of a new trial. *See DSPT Int'l Inc. v. Nahum*, 624 F.3d 1213, 1218 (9th Cir. 2010) ("A district court may grant a new trial only if the

44   EXPERIENCE HENDRIX V. HENDRIXLICENSING.COM

jury verdict is contrary to the clear weight of the evidence. . . .   A jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion. . . .   A jury verdict should be set aside only when the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict.") (footnote references and internal quotation marks omitted).[1]

As for the attorney's fees, I agree with the majority that the fee award should be vacated and remanded, but not for the reasons stated by the majority.  Because I am of the view that the jury's verdict, including the damages award, should stand, I would remand the attorney's fee order for the district court to award fees to Experience Hendrix as the prevailing party on the matters tried to the jury and on the matters resolved in its favor by the district court.  *See TrafficSchool.com v. Edriver, Inc.*, 653 F.3d 820, 834 (9th Cir. 2011) (remanding the denial of attorney fees).

CONCLUSION

I agree with the majority that we should reverse the district court's ruling that the WPRA is unconstitutional.  I also concur in the affirmance of the district court's decision granting summary judgment to Experience Hendrix on its

---

[1] The majority cites *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993), for the proposition that Experience Hendrix had to present proof of its expenses as part of its evidence of damages.  *See Majority Opinion*, p. 27.  However, *Lindy* contains no language to that effect.  In any event, Robert Hendrix's testimony informed the jury of Experience Hendrix's lost profits, as contemplated in *Lindy*.

infringement claims against Pitsicalis's use of the "Hendrix" marks.  I concur in the vacatur and remand of the permanent injunction.  I join the majority in reversing the district court's decision to decrease the damages awarded by the jury.  I also join the majority's vacatur of the attorney fee award.  I differ from the majority in that I would NOT remand for a new trial on damages.  I would remand for reinstatement of the damages awarded by the jury, and for an award of attorney's fees to Experience Hendrix as the prevailing party.  In short, the district court should reinstate the jury's verdict, award attorney's fees to Experience Hendrix, and let this case be done.